IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KLD ENERGY TECHNOLOGIES, INC., | § | CASE NO. 16-10345-HCM |
| | § | |
| 1611 Headway Circle, Building 3 | § | |
| Austin, TX 78754 | § | CHAPTER 11 |
| | § | |
| Taxpayer Identification No.: 32033226500 | § | |
| | § | |
| DEBTOR. | § | |

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS
AUTHORIZING THE DEBTOR TO INCUR
POSTPETITION SECURED, SUPER-PRIORITY INDEBTEDNESS; AND
SCHEDULING A FINAL HEARING THEREON**

KLD Energy Technologies, Inc. ("Debtor" or "KLD"), the above-referenced debtor and debtor in possession (collectively, the "Debtor") file this *Emergency Motion for Order Authorizing the Debtors to Incur Postpetition Secured Super-priority Indebtedness; and Scheduling a Final Hearing Thereon* (the "Motion"), and would respectfully show the Court as follows:

1. Through the Motion, the Debtor is requesting entry of an interim order (the "Interim Order") and a final order (the "Final Order") authorizing the Debtor to incur postpetition indebtedness under a senior, secured, superpriority credit facility[1] to the extent necessary to cover any cash expenditures during the pendency of the case.

2. The Debtor is requesting approval of a $2,500,000 debtor-in-possession financing loan (the "DIP Loan"), with a requested interim distribution of $475,000 pending final approval of the DIP Loan. The major terms of the DIP Loan are as follows:

---

[1] On the petition date, the Debtor had little or no cash or cash equivalents and will not be seeking use of cash collateral at this time.

| | |
|---|---|
| DIP Lender: | Adams DIP Finance Group, LLC (the "DIP Lender" or "ADFG, LLC") |
| DIP Loan: | Up to a total amount of $2,500,000 |
| Initial Advance: | Up to $475,000 to be used for operations during the first 15-day interim period |
| Subsequent Advances: | Up to a total of $2.5 million if funds raised by DIP Lender conditioned upon investment into DIP Lender by exiting KLD investors and non-KLD investors. |
| Conditions to Subsequent Advances: | Agreed Budget; satisfactory progress towards Plan of Reorganization according to time line set forth in Term Sheet |
| Maturity Date: | August 8, 2016, at which time the Debtor shall repay any outstanding advances under the DIP Loan or convert such advances into Series D Preferred Stock at the sole discretion of the DIP Lender through a confirmed plan of reorganization, as set forth in the Term Sheet |
| Interest Rate: | 10% per annum |
| DIP Collateral: | DIP Lender will receive a fully perfect first priority security interest in and to all pre-petition and post-petition assets and properties of the Debtor and a super-priority administrative expense claim subject to the carve-out provisions in the Term Sheet.<br><br>Debtor stipulates that certain pre-petition debts and Collateral are valid and enforceable |

3. The Debtor's requested usage of DIP Loan will be limited to: (i) expenditures for general working capital purposes in the ordinary course of business; (ii) expenditures specifically approved by the Court, and (iii) expenditures associated with the Debtor's bankruptcy case. All such cash usage will be subject to, and in accordance with, the terms of the weekly cash flow

budget prepared by the Debtor, in a form and substance acceptable to the DIP Lender (such approved cash flow budget, the "Budget").

4. The Debtor requests that the Court authorize the Debtor, on an interim and final basis, pursuant to Bankruptcy Code Sections 364(c) and 364(d), to engage in one or more borrowings under a proposed super-priority debtor-in-possession financing facility described herein (the "DIP Loan"). The DIP Loan will be secured by first-priority liens on all of the Debtor's assets, as well as super-priority claims with a priority over all administrative claims granted pursuant to Bankruptcy Code Sections 503(b) and 507(b). The DIP Lender has stated an intent to convert the DIP Loan to equity if the Debtor meets certain milestones and to participate in a proposed plan of reorganization that effectuates such conversion, as further set out in the Term Sheet.

5. In order to maintain and preserve Debtor's operations in preparation for the Chapter 11 filing, Debtor has relied on funds recently advanced to the Debtor by the contributors prior to the filing of the Case to the DIP Lender in the amounts of $375,000, plus $30,000 advanced to provide a retainer to Debtor's legal counsel. The DIP Lender is requiring that the $405,000 advanced prepetition funds be considered part of the DIP Loan such that the $405,000 amount is included in the DIP Loan facility and granted the full protection given to the postpetition proceeds of the DIP Loan facility.

6. The Debtors believes that upon entry of the Interim Order approving the Debtor's proposed DIP Loan borrowings, the Debtor will require an initial DIP Loan draw of approximately $475,000. Following that initial draw, and upon entry of the Final Order, the Debtors request that they be authorized, to the extent that their liquidity needs require, to obtain

3

additional DIP Loan borrowings in an amount not to exceed the maximum $2.5 million DIP Loan Commitment.

7. In accordance with Bankruptcy Rule 4001(c), a summary of the material terms of the DIP Loan is set forth below, in the Attorney Checklist Concerning Motions and Orders Pertaining to Use of Cash Collateral and Post-Petition Financing (the "Cash Collateral Checklist"), which is being filed concurrently herewith, and in the term sheet attached hereto as Exhibit A. The Term Sheet Amendment is attached and incorporated hereto as Exhibit B. The proposed loan agreement for the DIP Loan is attached as Exhibit C. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the attached term sheet.

## II. Jurisdiction and Venue

8. This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. Background

9. On March 25, 2016 (the "Petition Date"), the Debtor commenced its case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in the Debtor's bankruptcy cases.

10. The Debtor is privately-owned Austin, Texas-based technology company focused on developing innovative, sustainable propulsion technologies for the electric vehicle markets. The KLD propulsion and generation system is applicable in a broad range of markets, including

4

elevators, air conditioners, pumps, generators and many other applications. While the Debtor's current technology is in an advanced stage, the Debtor has requires additional funding to become revenue-positive. In 2015, the Debtor had anticipated $25,000,000 of new funding from an investment entity in California. When the funding failed to materialize despite the existence of written commitments, the Debtor began searching for alternative sources of investment or funding. Prior to filing, the Debtor solicited its shareholders and convertible debtholders for additional liquidity. When such efforts failed to produce adequate results, the Debtor engaged in conversations with a group of shareholders and debtholders willing to loan the Debtor the necessary capital but only through the protection afforded by a bankruptcy financing order.

11. Additional background regarding the Debtor, its operations, and the events leading up to its bankruptcy filing is set forth in the *Declaration of Mark Wabshall in Support of First Day Motions* (the "Wabshall Declaration"), which is filed concurrently herewith and incorporated herein by reference.

### IV. Proposed DIP Loan

12. On the Petition Date, the Debtor had approximately $8,345,597 of outstanding secured note obligations as set forth on the lien schedule attached as Exhibit D. The prepetition secured claims held against the Debtor are based on convertible debt instruments, as well as one of the Debtor's commercial real estate leases (collectively, the "Pre-Petition Debt Documents," and the debt set forth in such documents, the "Pre-Petition Secured Debt").

13. The majority of the Pre-Petition Secured Debt is secured by liens against substantially all of the Debtor's personal property. However, some of the liens securing a portion of the Pre-Petition Secured Debt were filed within ninety (90) days of the petition date and are subject to avoidance under Bankruptcy Code § 547.

5

14. On the Petition Date, the Pre-Petition Secured Debt was in the approximate amount of $8,345,597.

15. The Debtor seeks financing under the DIP Loan in order to both satisfy its working capital needs and fund the cost of administering its Bankruptcy Case. All such cash usage will be made pursuant to the Budget, subject to permitted variances of 10% per line item and in the aggregate.

16. The Debtor intends, to the extent possible, to sustain their business operations through DIP Loan proceeds. Consequently, the Debtor is alternatively requesting that the Court authorize it to engage in DIP Loan borrowings, in an amount up to the Commitment.

17. As set forth above, the liens that would secure any DIP Loan borrowings undertaken by the Debtor would be senior to all liens other than the Carve-Out. Such liens would prime the existing liens of the Pre-Petition Secured Debt holders. Pending entry of the Final Order, the Debtors are requesting interim approval to draw up to $475,000 of the DIP Loan Commitment and grant the DIP Lender such senior liens and grant the Pre-Petition Secured Debt holders replacement liens as adequate protection. The $475,000 initial advance will be used to pay the necessary expenditures listed on <u>Exhibit E</u>. The Debtor believes that sufficient asset value exists in the Debtor to adequately protect the holders of Pre-Petition Secured Debt, even with the addition of the $2,500,000 DIP Loan. Under a variety of valuation methods (Grow And Hold, 2020 Sale Exit, Revenue Growth, Capitalization Multiple), the Debtor believes the company is currently worth approximately $20,000,000. Although prior valuations have set the value of the Debtor at approximately $80,000,000 in mid-2015, this valuation is based upon the Debtor's current status of being in a Chapter 11 bankruptcy case, with little revenue or cash reserves. The prior valuation was based upon the Debtor's technology as utilized by the

6

Debtor's strategic partners, thereby generating revenue from engineering fees and royalties sufficient to justify the valuation.

18. Under the DIP Lender's current proposal, the $2,500,000 DIP Loan would be converted to equity in the Reorganized Debtor, with the DIP Lender gifting 80% of the equity pursuant to a confirmed plan of reorganization (as outlined in the Term Sheet) and retaining 20% of the senior equity in the Reorganized Debtor. Based on this proposed equity allocation, which is a result of negotiations with individuals and entities possessing significant knowledge of the Debtor's business and potential, the Debtor's valuation as a going concern is more conservatively estimated at approximately $12,500,000. Given that the Pre-Petition Secured Debt amounts to approximately $8,345,597, sufficient value exists to maintain the secured status of all lienholders, including the holders of Pre-Petition Secured Debt after the imposition of the additional $2,500,000 from the DIP Loan. Although the priming of the secured positions of the Pre-Petition Secured Debt will have a negative impact on their existing positions, such positions will remain fully secured.

19. Additionally, given that the DIP Loan requirements as set forth in the Term Sheet include the proposal and confirmation of a plan of reorganization that pays all allowed Pre-Petition Secured Debt in full with interest, the holders of such debtor are further adequately protected that such debt will be repaid. Under the DIP Lender's requirements, the holders of Pre-Petition Secured Debt will effectively be placed back in their prepetition secured positions post-confirmation by the conversion of the DIP Lender's secured claim into equity and the DIP Lender's requirement that the Pre-Petition Secured Debt be paid in full. Consequently, the proposed DIP Loan only temporarily alters the secured positions of the holders of the Pre-Petition Secured Debt and restores their repayment expectations at confirmation.

20. Bankruptcy Code Section 364(d) provides that a court may only authorize "priming" financing under Section 364(d) if: (i) a debtor is otherwise unable to obtain postpetition financing from other sources (including from creditors willing to provide postpetition financing in exchange for administrative claims, super-priority claims, or junior liens on encumbered property); and (ii) the debtor is able to adequately protect the liens upon estate property on which such senior or equal liens will be granted. 11 U.S.C. § 364(d). Here, both of these criteria are satisfied.

21. The Debtor, in the exercise of its reasonable business judgment, have concluded that it will be unable to obtain additional post-petition financing from any source other than the DIP Lender. Bankruptcy Code Section 364 does not require debtors to perform exhaustive inquiries from dozens of prospective lenders before concluding that credit is not available from other sources. *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dept. Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). Rather, the debtor must only make a good faith demonstration that credit is not available without resorting to senior, priming lien financing. *In re Showshoe Co.*, 789 F.2d at 1088.

22. Here, substantially all of the Debtor's assets are encumbered by the Pre-Petition Secured Debt. In light of the present state of the Debtor's business affairs, significant prepetition encumbrances, and uncertainty relating to the events forcing the Debtor to seek bankruptcy protection, the Debtor is confident that it will be unable to locate a lender that will be able to both: (i) provide financing on the terms offered by the DIP Lender; and (ii) adequately protect the liens securing the Pre-Petition Secured Debt by requiring the proposal of a plan of reorganization that pays such debt in full. In short, the DIP Lender are the only source of capital

8

able to provide the Debtor with the terms and conditions required to ensure that they will have sufficient capital available to preserve and maintain the value of their estates.

23. Bankruptcy Code Section 364(e) prevents the reversal or modification, on appeal, of any authorization to obtain credit or indebtedness under Section 364, so long as such credit and indebtedness was negotiated and obtained in good faith.

24. The Debtor and DIP Lender have negotiated the terms of the proposed DIP Loan at arm's length, and in good faith. Both the Debtor and DIP Lender were represented by separate counsel during the course of the DIP Loan negotiations. Those negotiations yielded a DIP Loan proposal on favorable terms, where in all likelihood, no alternative postpetition financing proposal, much less a financing proposal on terms as favorable as the ones proposed here, would be available. Consequently, the Debtor submits that any financing pursuant to the DIP Loan was negotiated in good faith and is entitled to the protections of Section 364(e).

25. The Debtor is depending on the usage of DIP Loan in order to maintain its ongoing business operations and research, development and production activities, and to preserve the going concern value of its estate for the benefit of its creditors and stakeholders.

26. In the event that the Debtor is denied access to the DIP Loan financing, the Debtor would have insufficient liquidity to continue its operations, forcing it to suspend business operations, including all ongoing research and development. Such a suspension of operations would cause the Debtor to suffer irreparable harm, which will reduce the value of the recovery realized by the Debtor's creditors and stakeholders. Because the Debtor requires immediate DIP Loan usage to prevent immediate and irreparable harm to its estate, this request complies with the requirements outlined in Rules 4001 and 6003 of the Federal Rules of Bankruptcy Procedure.

AUS-6237142-2 527825/1

27. The Debtor has served a copy of this Motion upon all of the Debtor's secured creditors and the list of the Debtor's twenty (20) largest unsecured creditors; (ii) the United States Trustee; (iii) those persons who have formally appeared in the Debtor's case and requested service pursuant to Bankruptcy Rule 2002; and (iv) all applicable governmental agencies, to the extent required by the Bankruptcy Rules and the Local Rules. The Debtor submits that no other or further notice need be provided.

**ACCORDINGLY**, the Debtor respectfully requests that this Court: (a) schedule an expedited hearing to consider the Debtor's proposed DIP Loan financing; (b) authorize the Debtors to borrow up to $475,000 on an interim basis through the DIP Loan; and (c) schedule a final hearing to approve the Debtor's proposed DIP Loan financing. The Debtor requests that the Court grant it such other and further relief to which it may be justly entitled.

Dated: March 29, 2016

Respectfully submitted,

HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Telephone: (512) 472-5456
Telecopy: (512) 479-1101
Email: Lynn.butler@huschblackwell.com

By: /s/ *Lynn Hamilton Butler*
Lynn Hamilton Butler
Texas Bar No. 03527350

**PROPOSED COUNSEL FOR DEBTOR**

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 29, 2016, a true and correct copy of the foregoing pleading is being served via electronic transmission on all parties listed on the Debtor's First-Day Motion Master Service List.

               /s/ *Lynn Hamilton Butler*
               Lynn Hamilton Butler