## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KLD ENERGY TECHNOLOGIES, INC., | § | CASE NO. 16-10345-HCM |
| | § | |
| 8910 Research Blvd., Bldg. B-1 | § | |
| Austin, TX 78754 | § | CHAPTER 11 |
| | § | |
| Taxpayer Identification No.: 32033226500 | § | |
| | § | |
| DEBTOR. | § | |

### MOTION OF KLD ENERGY TECHNOLOGIES, INC. FOR ENTRY OF A SECOND ORDER (A) APPROVING UPDATED BIDDING PROCEDURES, (B) SCHEDULING BID DEADLINES AND AN AUCTION, AND (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF

COMES NOW KLD Energy Technologies, Inc., the above captioned debtor in possession (the "Debtor"), and respectfully states the following in support of this motion (the "Motion"):

### INTRODUCTION

1. As this Court is aware, after a lengthy period in which the MyWay transaction has been pursued, that transaction has not closed. As a result, the Debtor, in consultation with the Nader Group, Jared Slosberg, and Anthony Masaryk (collectively, the "Secured Creditor Group"), has, in its business judgment, determined to pursue a final sale process which should result in the sale of substantially all of the Debtor's assets, either to MyWay under its current purchase agreement as modified by this Court's orders, through a credit-bid from a new venture formed by the Secured Creditor Group, or through higher and better cash offers from third parties. MyWay remains actively interested in the transaction, having gratuitously provided $100,000.00 to the Debtor in the last thirty (30) days. Additionally, TECO-Westinghouse Motor

Company expressed interest in the Debtor's technology, although is not currently submitting an offer.

2. The Debtor now seeks authority to establish bid procedures for an anticipated auction to take place in March 2018, before the second anniversary of the Petition Date (defined below), to ensure that the Debtor obtains the highest or otherwise best offer or combination of offers for the Debtor's assets. If approved, the proposed bidding procedures attached as **Exhibit A** (the "Bidding Procedures") will enable the Debtor to expeditiously complete the contemplated sale process. As set forth in further detail below, the Bidding Procedures, and the related relief requested in this Motion are in the best interests of the Debtor's estate and its stakeholders. Accordingly, the Debtor respectfully requests that the Court grant this Motion.

**JURISDICTION, VENUE, AND PROCEDURAL BACKGROUND**

3. The United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Court"), has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. On March 25, 2016 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), commencing the above-captioned chapter 11 case.

6. The bases for relief requested herein are section 105(a) and 363(b) of the Bankruptcy Code, rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

7. The Debtor continues to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date of this Motion,

the Office of the United States Trustee has not appointed an official committee of unsecured creditors.

**RELIEF REQUESTED**

8. By this Motion, Debtor respectfully seeks entry of an order; (a) approving the Bid Procedures; (b) approving procedures for assuming and assigning executory contracts and unexpired leases and certain related notices; (c) scheduling submission deadlines for any bids and an Auction (as defined below); and (e) approving the form and manner of notice thereof.

**BACKGROUND**

**I.  Summary of Key Terms of the Anticipated Purchase Agreement.**

9. The pertinent terms of the anticipated purchase agreement from a qualified bidder are summarized in the paragraphs below:

- **A.** <u>**Assets to be Acquired**</u>: The ultimate purchaser will acquire all of the Debtor's rights, title, and interest in, to and under any and all assets of the Debtor, save such assets as are expressly excluded by such bid. The Debtor may, at its discretion, accept bids for less than all of Debtor's assets.

- **B.** <u>**Sale of Assets Free and Clear of Liens, Claims and Interests**</u>: Because the Debtor has determined in its sound business judgment that the sale transaction is in the best interest of the Debtor's estate, the Debtor requests that the Court approve the proposed sale free and clear of all claims, liens, encumbrances, and other interests, except as expressly set forth in the successful purchase agreement.

**II.  The Bidding Procedures**

10. The proposed Bidding Procedures are designed to permit a fair, efficient, competitive, and value-maximizing auction process for the Debtor's assets, consistent with the timeline of the Chapter 11 case, to confirm the highest or otherwise best offer or to promptly identify the alternative bid or bids that will provide the Debtor with higher or otherwise better consideration. The following dates and deadlines regarding the Bidding Procedures are hereby requested:

a.  **Bid Deadline: Monday, March 12, 2018, at 4:00 p.m. (prevailing Central Time)** is the deadline by which all "Qualified Bids" (as defined in the Bidding Procedures) must be *actually received* by the parties specified in the Bidding Procedures (the "Bid Deadline").

b.  **Auction: Tuesday, March 13, 2018, at \_\_\_\_ a.m./p.m. (prevailing Central Time)** is set to commence before the Honorable H. Christopher Mott, United States Bankruptcy Court for the Western District of Texas, Austin Division.

c.  **Sale Hearing: Wednesday, March 14, 2018, at \_\_\_\_ a.m./p.m. (prevailing Central Time)** is the date and time the Sale Hearing is set to commence before the Honorable H. Christopher Mott, United States Bankruptcy Court for the Western District of Texas, Austin Division.

11. The Bidding Procedures also set forth the following bid requirements and criteria for each Bid to be deemed Qualified:

a.  not be conditioned on any financing contingency or the outcome or completion of a post-auction due diligence review by the potential bidder;

b.  for MyWay to submit a Qualified Bid, it must deposit the entire amount of its purchase price in the Husch Blackwell trust account or in an agreed-upon escrow account located in the United States;

c.  must clearly state which of the assets the bidder seeks to acquire, including a designation of which executory contracts are to be assumed and assigned to bidder, with any contracts not specifically rejected by the bid deemed to be purchased pursuant to the bid;

d.  bids for less than all of the Debtor's assets are permitted;

e.  bidders to sign and execute a Non-Disclosure Agreement before access to data room, which will be set up prior to disclosure of proprietary information;

f.  provide the Debtor, before the Bid Deadline, with sufficient and adequate information to demonstrate, to the satisfaction of the Debtor, that such bidder has the financial wherewithal and ability to consummate a sale;

g.  fully disclose the identity of each entity and entity's shareholders, partners, investors and ultimate controlling entities, including but not limited to any creditors or equity holders of the Debtor, that will be bidding for or purchasing the Assets or part of the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered to complete the transactions on the terms contemplated by the parties;

h. any and all permitted contingencies or conditions to closing of a qualified bid (see 11(b) above) must be explicitly stated in the bid or otherwise deemed waived;

i. qualified bids to remain irrevocable until the sale order is entered, with unsuccessful bidders agreeing to stay in priority order as Back-Up Bids (as defined in the Bidding Procedures) in case the successful bidder fails to consummate the sale transaction; and

j. on or before the Bid Deadline, submit cash deposit of $50,000.00 accompanying each Bid, by wire transfer to an account established by the Debtor and to be released upon withdrawal of bidder or entry of sale order.

12. The Bidding Procedures will provide potential bidders with ample notice and time to conduct thorough due diligence to submit binding bids in advance of a Confirmation Hearing or Sale Hearing (defined below), as applicable. The Bidding Procedures are designed to encourage all prospective bidders to put their best bids forward, bring finality to the Debtor's restructuring process, and create a path forward in the Bankruptcy Case.

13. If the Debtor receives only one Qualified Bid, the Debtor may cancel the Auction and the Debtor may declare the one Qualified Bid as the winning bid with respect to the assets. If one or more Qualified Bids is timely received from a Qualified Bidder to participate in the Auction in accordance with the Bidding Procedures, the Debtor shall conduct the Auction on the terms set forth herein and in the Bidding Procedures.

14. As described above, the Debtor intends to seek entry of an order approving the purchase agreement pursuant to sections 105(a), 363(b), and 365 of the Bankruptcy Code (the "Sale Order," and, the hearing to consider entry of the Sale Order, the "Sale Hearing").

15. Because the Bidding Procedures are attached as **Exhibit A**, they are not restated fully herein. Generally speaking, however, the Bidding Procedures establish, among other things:

- Debtor will provide the Auction Notice and Bidding Procedures to interested parties within three days of entry of the Order;

- the requirements that potential bidders must satisfy to participate in the bidding process and become "Acceptable Bidders";

- the availability of access to, and conduct during due diligence by Acceptable Bidders;

- the deadlines and requirements for submitting competing bids and the method and criteria by which such competing bids are deemed to be "Qualified Bids" sufficient to trigger the Auction and participate in the Auction, including the minimum consideration that must be provided, the terms and conditions that must be satisfied, and the deadline that must be met, for any Acceptable Bidder to be considered a "<u>Qualified Bidder</u>," which shall all be determined by the Debtor;

- the manner in which Qualified Bids will be evaluated by the Debtor to determine the Starting Bid(s) (as defined below) for the Auction;

- the conditions for having an Auction and procedures for conducting the Auction, if any;

- the criteria by which the "Successful Bidder" will be selected by the Debtor; and

- various other matters relating to the sale process generally, including regarding the designation of the Back-Up Bid, return of any good faith deposits, and certain reservations of rights.

16. Importantly, the Bidding Procedures recognize and comply with the Debtor's fiduciary obligations to maximize the value of their estates and, as such, do not impair the Debtor's ability to consider all qualified bid proposals, and preserve the Debtor's right to modify the Bidding Procedures as appropriate to maximize value for its estates.

**III. Form and Manner of Sale Notice.**

17. Within three business days of entry of the Order, the Debtor will provide notice of the auction (along with the Bid Procedures) and related dates and times upon the following parties (collectively, the "Notice Parties"): (a) the United States Trustee for the Western District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtor (on a consolidated basis); (c) counsel to the Debtor's lenders; (d) the Internal Revenue Service; (e) any parties who

have expressed written interest in purchasing the Debtor's assets; (f) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the Debtor's assets offered for sale; (g) all non-Debtor parties to any executory contract or unexpired contract to which a Debtor is a party; (h) all applicable state and local taxing authorities; (i) each governmental agency that is an interested party with respect to the proposed Auction and the transactions proposed thereunder; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. In addition, within three business days of entry of the Order, the Debtor will publish the Auction Notice, with any modifications necessary for ease of publication, once in *Austin American-Statesman* to provide notice to any other potential interested parties.

18.     The Debtor submits that the notice of the auction is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including the date, time, and place of the Auction (if one is held) and the Bidding Procedures and the dates and deadlines related thereto.

19.     In addition to those procedures set forth above, the Debtor also is seeking approval of certain procedures to facilitate the fair and orderly assumption, assumption and assignment, or rejection of certain of the Debtor's executory contracts and unexpired leases (each, as applicable, a "<u>Executory Contract</u>" or "<u>Unexpired Lease</u>," and, collectively, the "<u>Executory Contracts and Unexpired Leases</u>"), as may be designated in the purchase agreement or any other Successful Bid (the "<u>Assumption Procedures</u>"). The proposed Assumption Procedures are as follows:

    a.    **<u>Cure Notice</u>**. Within fourteen days of entry of the Order, the Debtor shall file with the Court and serve via first class mail, electronic mail, or overnight delivery notice on all non-Debtor Contract and Lease counterparties (collectively, the "<u>Contract Parties</u>," and each, a "<u>Contract Party</u>").

b. **Content of Cure Notice**. The cure notice shall notify the applicable Contract Parties that the Executory Contracts and Unexpired Leases may be subject to assumption and assignment in connection with the proposed Sale Transaction and contain the following information: (i) identification of the applicable Executory Contracts and Unexpired Leases; (ii) the applicable Contract Parties; (iii) the Debtor's good faith estimates of the corresponding cure amounts required to cure any and all outstanding defaults under the Executory Contracts and Unexpired Leases (the "Cure Amount"); and (iv) the deadline by which any Contract Party to an Executory Contract or Unexpired Lease may file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto; *provided* that service of a cure notice does not constitute an admission that such Executory Contract or Unexpired Lease is an executory contract or unexpired lease or that such Executory Contract or Unexpired Lease will be assumed at any point by the Debtor or assumed and assigned pursuant to the Purchase Agreement or any other Successful Bid.

c. **Objections**. Objections, if any, to a cure notice must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Amount, state the cure amount alleged to be owed to the objecting Contract Party, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served so as to be <u>actually received</u> by counsel to the Debtor and counsel to the Secured Creditor Group by _____ (i.e., within three business days of the Bid Deadline of _____). Any objection will be adjudicated on or before the Sale Hearing.

d. **Effects of Filing an Objection to a Cure Notice**. A properly filed and served objection to a cure notice will reserve such objecting party's rights against the Debtor only with respect to the assumption and assignment of the Executory Contract or Unexpired Lease, at issue, and/or objection to the accompanying Cure Amount, as set forth in the objection, but will not constitute an objection to the remaining relief requested in this Motion. Any objection will be adjudicated on or before the Sale Hearing. Any relief that is required to be determined in an adversary proceeding must be obtained by such proponent prior to or in connection with the Sale Hearing. Any such relief that is not obtained by the proponent prior to or in connection with the Sale Hearing will be waived.

## BASIS FOR RELIEF

**I.    The Relief Sought in the Proposed Order Is in the Best Interests of the Debtor's Estate and Should be Approved**

20. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In addition, section 105(a) of the Bankruptcy Code provided that the "court may issue any order, process, or judgment that is necessary to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a).

21. Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also see also In re Crutcher Resources Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park Partnership*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989). In reviewing a proposed sale of assets, a bankruptcy court should give deference to the business judgment of a debtor in possession when it deems the sale to be appropriate. *See Esposito v. Title Ins. Co. (In re Fernwood Mkts.)*, 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987).

22. Here, the Debtor carefully evaluated a number of qualitative and quantitative factors in designing a process that they believe will maximize the value of their estates, produce maximum recoveries, and result in a successful restructuring of its estate. This process includes the Bidding Procedures, which will seek to maximize the purchase price for the Debtor's assets.

The Bidding Procedures will therefore provide a mechanism to solicit additional offers from financially capable and interested potential purchasers.

23. The Debtor submits that the Bidding Procedures are fair and appropriate under the circumstances, consistent with procedures routinely approved by courts in this district and other districts in Chapter 11 cases and in the best interest of the Debtor's estate. The Bidding Procedures are designed to facilitate orderly yet competitive bidding to maximize the purchase price for the sale or sales of the Debtor's assets. In particular, the Bidding Procedures contemplate an open auction process and provide potential bidding parties with ample time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

24. At the same time, while permitting the Debtor to honor its contractual obligations, the Bidding Procedures provide the Debtor with an opportunity to consider competing bids and select the highest or otherwise best offer to effectuate the sale transaction. As such, the Debtor and its creditors can be assured that the value obtained will be fair and reasonable and at or above market. In the Debtor's business judgment, the Bidding Procedures will therefore ensure that they can effectively manage proposals, maximize recoveries for all stakeholders, and provide the Debtor a path to a successful restructuring.

### III. The Form and Manner of the Auction Notice Should Be Approved.

25. Pursuant to Bankruptcy Rule 2002(a), the Debtor is required to provide its creditors with 21-days' notice of a hearing where the Debtor will seek to use, lease, or sell property of the estate outside the ordinary course of business. Bankruptcy Rule 2002(c) requires any such notice to include the time and place of the auction and the hearing and the deadline for filing any objections to the relief requested therein. The Debtor seeks approval of the Auction

Notice as proper notice of the Auction. The Debtor submits that notice of this Motion and the related hearing to consider entry of the Order coupled with service of the Auction Notice as provided for herein constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and in satisfaction of, the applicable requirements of Bankruptcy Rule 2002. Accordingly, the Debtor requests that this Court approve the form and manner of the Auction Notice proposed herein.

**IV.    The Procedures for the Assumptions and Assignment of Contracts Should Be Approved.**

    **A.    The Assumption and Assignment of the Executory Contracts and Unexpired Leases Reflects the Debtor's Reasonable Business Judgment.**

26.    Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign executory contracts and unexpired leases, subject to the approval of the Court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided. The debtor's decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *See, e.g.*, *In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008) (business judgment test "rather obviously presupposes that the estate will assume a contract only where doing so will be to its economic advantage."); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990) ("[T]he standard to be applied for approval of the assumption [of an executory contract] is the business judgment standard . . . .").

27.    Here, the Court should approve the decision to assume and assign the Executory Contracts and Unexpired Leases in connection with the Sale Transaction as a sound exercise of the Debtor's business judgment.

- First, the Executory Contracts and Unexpired Leases are necessary to the Debtor's operations, and as such, they are essential to inducing the best offer for the Debtor's assets.

- Second, it is unlikely that any purchaser would want to acquire any company on a going-concern basis unless a significant number of the Executory Contracts and Unexpired Leases needed to conduct the business and manage the day-to-day operations were included in the transaction.

- Third, the Debtor anticipates that the purchase agreement provides that the assumption and assignment of the Executory Contracts and Unexpired Leases is integral to, and inextricably integrated in, the sale.

- Finally, the Executory Contracts and Unexpired Leases will be assumed and assigned though the process approved by the Court pursuant and, thus, will be reviewed by key constituents in these Chapter 11 cases.

28. Accordingly, the Debtor submits that the assumption and assignment of the Executory Contracts and Unexpired Leases by way of the assumption procedure should be approved as an exercise of their business judgment.

**B.    Defaults Under the Assumed Contracts Will be Cured Through the Sale Transaction.**

29. Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) and section 1123 of the Bankruptcy Code, as applicable: (a) that a debtor cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract; (b) compensate parties for pecuniary losses arising therefrom; and (c) provide adequate assurance of future performance thereunder. This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting nondebtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain." *Matter of Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

30. The Debtor submits that the statutory requirements of sections 365(b)(1)(A) and 1123(b)(2) of the Bankruptcy Code, as applicable, will be satisfied (and promptly) because the purchase agreement requires each buyer to represent that it is capable of curing all defaults associated with, or that are required to properly assume, the Executory Contracts and Unexpired Leases. Because the Order provides a clear process by which to resolve disputes over cure amounts or other defaults, the Debtor is confident that if defaults exist that must be cured, such cure will be achieved fairly, efficiently, and properly, consistent with the Bankruptcy Code and with due respect to the rights of Contract Parties.

### C. Non-Debtor Parties Will be Adequately Assured of Future Performance.

31. Similarly, the Debtor submits that the third requirement of section 365(b)(1)(C) of the Bankruptcy Code—adequate assurance of future performance—is also satisfied given the facts and circumstances present here. "The phrase 'adequate assurance of future performance' adopted from section 2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based upon the facts and circumstances of each case." *In re U.L. Radio Corp.*, 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982). Although no single solution will satisfy every case, "the required assurance will fall considerably short of an absolute guarantee of performance." *In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605−06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present where a prospective assignee has financial resources and has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

32. The Debtor believes that it can and will demonstrate that the requirements for assumption and assignment of the Executory Contracts and Unexpired Leases to the Successful Bidder will be satisfied. Any approved purchase agreement will require buyer to provide adequate assurance of future performance to the extent required as to any Executory Contract or Unexpired Lease that is to be assumed and assigned. Any approved purchase agreement will also require the buyer to represent that it is capable of curing any such defaults. The Court therefore should have a sufficient basis to authorize the Debtor to reject or assume and assign the Executory Contracts and Unexpired Leases.

V. **Relief Under Bankruptcy Rules 6004(h) and 6004(d) is Appropriate.**

33. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtor requests that the Confirmation Order or Sale Order, as applicable, be effective immediately upon its entry by providing that the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) is waived.

34. The purpose of Bankruptcy Rule 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Bankruptcy Rule 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, *Collier* suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no

objection to the procedure." 10 *Collier on Bankruptcy* ¶ 6004.11 (15 rev. ed. 2006). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay should also be reduced to the amount of time actually necessary to file such appeal. *Id*.

35. To maximize the value received for the Debtor's assets, the request that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

**NOTICE**

36. The Debtor will provide notice of this Motion to the following parties or their respective counsel (if known): (a) the United States Trustee for the Western District of Texas; (b) the holders of the 20 largest unsecured claims against the Debtor (on a consolidated basis); (c) counsel to the Debtor's lenders; (d) the Internal Revenue Service; (e) any parties who have expressed written interest in purchasing the Debtor's assets; (f) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the Debtor's assets offered for sale; (g) all non-Debtor parties to any executory contract or unexpired contract to which a Debtor is a party; (h) all applicable state and local taxing authorities; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given

WHEREFORE, the Debtor respectfully requests that the Court enter the Order and grant the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: January 24, 2018

Respectfully submitted,
HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Telephone: (512) 472-5456
Telecopy:   (512) 479-1101
Email: Lynn.butler@huschblackwell.com


By: */s/ Lynn Hamilton Butler*
Lynn Hamilton Butler
Texas Bar No. 03527350

**COUNSEL FOR DEBTOR**

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2018, a true and correct copy of the foregoing pleading is being served via this Courts ECF notification system to those parties registered to receive such notification as listed below.

                                                            /s/ *Lynn Hamilton Butler*
                                                            Lynn Hamilton Butler

**16-10345-hcm Notice will be electronically mailed to:**

Zachery Z. Annable on behalf of Creditor MLD/KLD Investments, LLC; Creditor Rettung Capital Partners, Inc.; Creditor Michael L. Davis
zannable@franklinhayward.com

Jason Bradley Binford on behalf of Creditor Ira John Yates
jbinford@krcl.com

Kay D. Brock on behalf of Creditor Travis County
bkecf@traviscountytx.gov, kay.brock@traviscountytx.gov

Ann Burke Brogan on behalf of Creditor Carol Barry
abrogan@clrbfirm.com, ctuggle@clrbfirm.com;jstiff@clrbfirm.com

Cleveland R Burke on behalf of Creditor Anthony Masaryk
Cleveland.Burke@wallerlaw.com,
tammy.greenblum@wallerlaw.com;annmarie.jezisek@wallerlaw.com

Andrew G. Edson on behalf of Creditor P3 North America, Inc.
andrew.edson@strasburger.com, mina.alvarez@strasburger.com

Stacy Zoern Goad on behalf of Creditor Stacy Zoern Goad
szoern@gmail.com

Kerry L. Haliburton on behalf of Creditor James R. Steele; Creditor Jim Pete Hale; Creditor Steele Enterprises
haliburton@namanhowell.com,
raquel@namanhowell.com;belinda@namanhowell.com;karen@namanhowell.com

Kendall D. Hamilton on behalf of Creditor Frost Bank
hamiltonlaw@austin.rr.com

Scott D. Lawrence on behalf of Interested Party Ad Hoc Committee of Unsecured Creditors of KLD Energy Technologies, Inc.

scott.lawrence@akerman.com

Joseph D. Martinec on behalf of Interested Party Adams DIP Finance Group, LLC
martinec@mwvmlaw.com, white@mwvmlaw.com

Kell C. Mercer on behalf of Creditor Jared Slosberg
kell.mercer@mercer-law-pc.com

Jesse Tyner Moore on behalf of Interested Party F & T Limited
jmoore@dykema.com

Kelli S. Norfleet on behalf of Creditor Naha Holdings; Creditor Kevin Stolle
kelli.norfleet@haynesboone.com

Reese A O'Connor on behalf of Interested Party MyWay Group, Co., Ltd.
roconnor@velaw.com, jwest@velaw.com;sabramowitz@velaw.com

Michael M. Parker on behalf of Creditor Green Ray Technologies, LLC; Plaintiff Green Ray Technologies, LLC; Plaintiff Ramon A. Caamano
michael.parker@nortonrosefulbright.com

B. Weldon Ponder, Jr. on behalf of Interested Party Limpinbear Family Partnership, Ltd.
welpon@austin.rr.com, wponder3@austin.rr.com

John C. Roy on behalf of Interested Party Texas Treasury Safekeeping Trust Company
casey.roy@oag.state.tx.us

Peter C. Ruggero on behalf of Creditor Dale McPherson; Creditor Ira John Yates
peter@ruggerolaw.com

Jonathan J Sandstrom Hill on behalf of Creditor Paul D Agarwal
jsandstromhill@capitalcommercial.com

David Lawrence Staab on behalf of Creditor GAP VII IND-A Walnut, LP
david.staab@haynesboone.com

Sabrina L. Streusand on behalf of Creditor Dell Financial Services; Creditor Paul Nader, M.D.
streusand@slollp.com, prentice@slollp.com

Eric J. Taube on behalf of Creditor Anthony Masaryk
eric.taube@wallerlaw.com, sherri.savala@wallerlaw.com;annmarie.jezisek@wallerlaw.com

Daniel L Tobey on behalf of Interested Party MyWay Group, Co., Ltd.
dtobey@velaw.com

United States Trustee - AU12
ustpregion07.au.ecf@usdoj.gov

Richard Dietrich Villa on behalf of Creditor Paul Nader, M.D.
villa@slollp.com, prentice@slollp.com

William L. Wallander on behalf of Interested Party MyWay Group, Co., Ltd.
bwallander@velaw.com, sbarden@velaw.com

Jarom J Yates on behalf of Creditor Greenfield Partners, LLC
jarom.yates@haynesboone.com, kim.morzak@haynesboone.com